J-S95003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: D.D.G., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.G., FATHER | No. 2496 EDA 2016 |

Appeal from the Decree Dated July 27, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at Nos: CP-51-DP-0002035-2014; and
CP-51-AP-0000378-2016

BEFORE:  STABILE, MOULTON, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED FEBRUARY 08, 2017**

Appellant D.G. ("Father") appeals from the July 27, 2016 decree of the Court of Common Pleas of Philadelphia County ("trial court"), which involuntarily terminated his parental rights to his male child, D.D.G. ("Child"), born on November 17, 2005, under Section 2511(a)(1), (2) and (b) of the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2) and (b), and changed the permanency goal to adoption under Section 6351 of the Juvenile Act, 42 Pa.C.S.A. § 6351.  Upon review, we affirm.

The facts and procedural history underlying this case are uncontested and thoroughly recited by the trial court in its Pa.R.A.P. 1925(a) opinion. Briefly, on August 19, 2014, the Department of Human Services ("DHS") received a General Protective Services ("GPS") report, alleging that in June of 2014, Child's mother ("Mother"), S.S.,  left him with his maternal aunt for

the weekend and failed to return for him. The report also alleged that Father physically had abused Child and that Father forced Child to vomit as a form of punishment. Additionally, the report alleged that Child had witnessed his parents use drugs and that he did not wish to return to his Mother's care. On December 2, 2014, Child was adjudicated dependent. DHS received legal custody of Child who continued to be placed with maternal aunt. Parents were provided with opportunities to rectify their conduct for purposes of regaining custody of Child, but failed to complete the objectives of their respective single case plan ("SCP"). Specifically, Father's objectives included attending MENERGY, where he was to participate in a domestic violence and spousal abuse program, which he never completed. Father's other objectives were to complete a parenting class, receive drug and alcohol treatment, and obtain employment. He failed to satisfy these objectives. Also, Father tested positive for cocaine use on December 2, 2014.

On April 20, 2016, DHS filed petitions for involuntary termination of the parental rights of parents, and for a change in the permanency goal for Child to adoption. Following a hearing, the trial court terminated the parents' parental rights to Child and changed the permanency goal to adoption. Father timely appealed.[1] Father filed a concise statement of

---

[1] Mother does not contest the termination of her parental rights to Child.

errors complained of on appeal under Pa.R.A.P. 1925(a)(2)(i) and (b).  In response, the trial court issued a Pa.R.A.P. 1925(a) opinion, concluding that it did not abuse its discretion in terminating Father's parental rights to Child under Section 2511(a)(1), (2) and (b) of the Adoption Act.

On appeal,[2] Father raises three issues for our review, reproduced here verbatim:

> I. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Father, D.G. pursuant to 23 Pa.C.S.A. [§] 2511(a)(1) where Father presented evidence that he tried to perform his parental duties but was denied access to his son.
>
> II. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Father, D.G. pursuant to 23 Pa.C.S.A. [§] 2511(a)(2) where Father presented evidence that he has remedied his situation by taking parenting classes, attending drug and alcohol treatment attended Menergy to address his goal domestic violence counselling [sic] and obtaining adequate housing for his family.  Father has the present capacity to care for his child.

_____

[2] Our standard of review for orders terminating parental rights is as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence.  Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand.  Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict.  We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005) (quoting *In re C.S.*, 761 A.2d 1197, 1199 (Pa. Super. 2000) (*en banc*)), *appeal denied*, 982 A.2d 824 (Pa. 2005).

> III. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Father, D.G. pursuant to 23 Pa.C.S.A. [§] 2511(b) where the evidence was presented that established [Child] had lived with his Father for the first part of his life. Additionally, Father was denied visitation with his child while his child was in placement.

Father's Brief at 7.[3]

After careful review of the record and the relevant case law, we conclude that the trial court accurately and thoroughly addressed the merits of the Father's claims.[4] **See** Trial Court Rule 1925(a) Opinion, 10/13/16, at 10-19. As the evidence of record reveals, Father's repeated and continued

_____

[3] Insofar as Father argues that he was denied access to Child, we decline to address this argument because Father failed to preserve it in his Rule 1925 statement. Established law makes clear any issues not raised in a Rule 1925 statement will be deemed waived. **Commonwealth v. Castillo**, 888 A.2d 775, 780 (Pa. 2005) (quoting **Commonwealth v. Lord**, 420, 719 A.2d 306, 309 (Pa. 1998)). The concise statement must properly specify the error to be addressed on appeal. **Commonwealth v. Dowling**, 778 A.2d 683 (Pa. Super. 2001). Moreover, the waiver standards apply in the family law context. **See In re L.M.**, 923 A.2d 505, 509–10 (Pa. Super. 2007) (applying **Lord** standard to appeal from order terminating parental rights); **In re C.P.**, 901 A.2d 516, 522 (Pa. Super. 2006) (holding mother waived claim challenging termination of her parental rights because it was not included in her concise statement, among other reasons); **In re C.M.**, 882 A.2d 507, 515 (Pa. Super. 2005) (holding father waived issues regarding goal change when he failed to specify argument in his concise statement). Even if this argument was not waived, Father still would not be entitled to relief. As the trial court noted, since November 2015, Father has failed to contact the case manager to inquire about Child. Father similarly has failed to meet the required SCP objectives to be reunified with Child, who continues to feel uncomfortable being around his Father.

[4] Because we may affirm the trial court's decision regarding the termination of parental rights on any *one* subsection of Section 2511(a), we focused on Section 2511(a)(2) and (b). **See In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), **appeal denied**, 863 A.2d 1141 (Pa. 2004).

incapacity, abuse, neglect, and refusal has caused Child to be without essential parental care for the entire life of the case and Father has failed to meet the goals necessary to remediate the causes of his incapacity, abuse, neglect, and refusal.[5] Moreover, as the trial court observed, "termination of Father's parental rights would be in the best interest of Child, who lived with his [m]aternal [a]unt and [u]ncle since placement started and is clearly bonded with them." *Id.* at 17. Accordingly, we conclude that the trial court did not abuse its discretion in terminating Father's parental rights to Child. We, therefore, affirm the trial court's July 27, 2016 decree. We further direct that a copy of the trial court's October 13, 2016 Rule 1925(a) opinion be attached to any future filings in this case.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/8/2017

---

[5] A parent's limited success with services designed to remedy barriers to effective parenting may support termination under Section 2511(a)(2). *See* *B.L.W.*, 843 A.2d at 385. Termination of parental rights pursuant to Section 2511(a)(2) may be predicated upon either incapacity or refusal to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002).

THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA, PHILADELPHIA COUNTY
IN THE COURT OF COMMON PLEAS

| | |
|---|---|
| IN THE INTEREST OF: | : FAMILY COURT DIVISION |
| | : JUVENILE BRANCH |
| | : |
| D.D.G., a Minor | : CP-51-AP-0000378-2016/CP-51-DP-0002035-2014 |
| d/o/b: 11/17/2005 | : |
| | : |
| | : Superior Court No. |
| Appeal of: | : 2496 EDA 2016 |
| D.G., Father | : |

## O P I N I O N

## INTRODUCTION

D.G., ("Father"), Appeals from the Decree and Orders entered by this Court on July 27, 2016, granting the Petition to Involuntarily Terminate Father's Parental Rights to his minor male child, D.D.G., ("Child"), born on November 17, 2005, and changing the Child's Permanency Goal to Adoption, filed by the Department of Human Services ("DHS") on April 20, 2016, and served on all parties.

After a full Hearing on the merits, this Court found that clear and convincing evidence was presented to terminate the parental rights of both Father and Mother.

In response to the Order of July 27, 2016, terminating his parental rights, Father, by and through his counsel, filed a Notice of Appeal with Statement of Matters Complained of on Appeal on July 28, 2016. Mother, S.S., did not appeal the Court decision.

1

## STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

In his Statement of Matters Complained of on Appeal, Father raises the following issues:

a. The Trial Court erred and/or abused its discretion by entering an order on July 27, 2016 involuntarily terminating the parental rights of Father. More specifically, the Trial Court abused its discretion as substantial, sufficient and credible evidence was presented at the time of trial which would have substantiated denying the Petition for Goal Change Termination. The City has failed to meet its burden for termination by clear and convincing evidence under 23 Pa.C.S.A. §2511(a)(1), (2), (5), and (8).

b. The Trial Court erred and/or abused its discretion by terminating the parental rights of Father, pursuant to 23 Pa.C.S.A. §2511(b) where DHS failed to prove by clear and convincing evidence that involuntary terminating his parental rights best served the emotional needs and welfare of his child.

## PROCEDURAL HISTORY

On August 19, 2014, the Department of Human Services (DHS) received a General Protective Services (GPS) Report which alleged that in June 2014, the Child's Mother, S.S., left the Child with his Maternal Aunt, T.S., for the weekend, and failed to return for him; the Child's Father had physically abused him; that Father forced the Child to vomit as a form of punishment; that the Child had witnessed his parents use drugs together and that he did not wish to return to Mother's care. It further alleged that Maternal Aunt, T.S., attempted to file for Custody of the Child at the Domestic Relations Branch of the Philadelphia Family Court (DR Court), but was unable to afford the filing

2

fees; that T.S. wished to care for the Child. The Report also alleged that Mother had seven (7) other Children who were not in her care and were being cared for by various relatives; that Mother and Father had a history of using cocaine and marijuana combined with phencyclidine (PCP); that Mother had a history of mental health issues. This Report was substantiated. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/20/2016, ¶"a").

On August 20, 2014, DHS spoke to Maternal Aunt, T.S., and Child on the telephone. T.S. informed DHS that she had been caring for the Child since June 8, 2014, and Mother has had no contact with her or the Child since that time. T.S. further stated that Mother has a history of drug use. The Child confirmed the allegations of the Report and stated that he had witnessed his parents using cocaine. Child stated that his parents physically abused him and that he did not wish to return to Mother's care. DHS scheduled an appointment to visit the home on August 26, 2014. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/20/2016, ¶"b").

On August 26, 2014, DHS visited the home of Maternal Aunt, T.S. DHS performed a home evaluation and deemed the home to be appropriate, and submitted clearances for Maternal Aunt, T.S. and her husband, R.C. T.S. expressed her interest in continuing to care for the Child. The Child told DHS that, in the past, Mother had taken him to homes where people were using drugs. The Child stated that Father physically abused him and used drugs in front of him. The Child further stated that he felt safe in the care of T.S. and that he did not wish to return to his parents' care. (Exhibit "A"

3

Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/20/2016, ¶"c").

The Child informed DHS that he attended the second grade at Belmont Charter School; however, he stated that he asked his Mother to keep him home from school for approximately the last month of the 2013-2014 school year because he was being bullied. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/20/2016, ¶"d").

DHS attempted to visit Mother on several occasions; however, there was no response. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/20/2016, ¶"e").

On August 27, 2014, DHS obtained an Order of Protective Custody (OPC) for the Child. He remained in the care of Maternal Aunt, T.S. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/20/2016, ¶"f").

A Shelter Care Hearing was held on August 29, 2014, before the Honorable Kevin M. Dougherty. The Court found that legal custody of the Child, D.D.G., would transfer to Philadelphia Department of Human Services. The Child to remain in Foster Care through Kinship with Maternal Aunt and Uncle. DHS received a Report that Mother had abandoned the Child and that the Child was not eating at home. (Shelter Care Order, 8/29/2014).

On November 18, 2014, a Hearing was held before Juvenile Master William Rice, who deferred adjudication and ordered that the temporary commitment to DHS stand. Master Rice ordered that Mother and Father be referred to Achieving Reunification

4

Center (ARC); that Mother have supervised visits at the Child's discretion; and that Mother be referred to the Clinical Evaluation Unit (CEU) for a forthwith drug screen, assessment and recommendations. Continuation granted, all parties requested a Judge. (Continuance Order, 11/18/2014).

An Adjudicatory Hearing was held on December 2, 2014 before the Honorable Allan L. Tereshko. The Court found legal custody of the Child remains with DHS, and placement in Foster Care through Kinship should continue. Child is with Maternal Aunt. Mother and Father to have one hour supervised visitation weekly at the Agency. DHS to apply for Child's Birth Certificate/Social Security Card, if necessary. Parents referred to CEU for assessment, forthwith full drug and alcohol screen, and three (3) random drug and alcohol screens. FSP meeting within 30 days. Parents to comply with all FSP objectives, services and recommendations. (Order of Adjudication and Disposition— Child Dependent, 12/02/2014).

On February 13, 2015, CEU submitted a Progress Report as to Mother stating that Mother was a no call/no show to her scheduled appointment on December 23, 2014 and that her drug screen on December 2, 2014 was positive for cocaine. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/20/2016, ¶"j").

A Permanency Review Hearing was held on February 20, 2015 before the Honorable Allan L. Tereshko. The Court found the legal custody of the Child shall remain with DHS. Placement of the Child remains in Foster Care (Kinship). Parents referred to CEU forthwith for drug screen, assessment, monitoring, and three (3) random drug screens prior to next Court date. Mother and Father to comply with domestic

5

violence counseling. Father to continue parenting classes through ARC, Father to continue drug and alcohol treatment through Northeast Treatment Centers (NET). Father referred to Behavioral Health Services (BHS) for consultation and evaluation. DHS to ensure Child begins counseling. Supervised visits for parents remains. (Permanency Review Order, 2/20/2015).

On May 11, 2015, CEU submitted a Progress Report as to Father, stating that Father engaged in Intensive Outpatient treatment through NET on December 29, 2014; that his attendance was inconsistent; and that his drug screen on December 2, 2014 was positive for cocaine. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/20/2016, ¶"1").

A Permanency Review Hearing was held on May 12, 2015 before the Honorable Allan L. Tereshko. The Court found the legal custody of the Child shall remain with DHS. Placement of the Child remains in Foster Care (Kinship). Mother and Father's visits were suspended until the Child received two (2) therapy sessions. Mother and Father were to sign appropriate releases. Court granted DHS permission to sign for the Child to receive an evaluation and therapy forthwith. Mother referred to ARC for all appropriate services. Parents referred to CEU forthwith drug screen, assessment, monitoring, three (3) random drug screens prior to next Court date. Father referred to ARC for appropriate services. DHS to refer Father to MENERGY. (Permanency Review Order, 5/12/2015).

On July 13, 2015, DHS and the Community Umbrella Agency (CUA) held a Single Case Plan (SCP) meeting. The parental objectives for Father were to complete the Menergy program; to maintain sobriety; to comply with all recommended drug and

alcohol treatments and screens; to refrain from illegal drug use; to engage in family therapy when recommended; and to visit as permitted and agreed. Both Mother and Father participated in the meeting and signed the SCP. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/20/2016, ¶"n").

On July 22, 2015, Warren E. Smith (WES) Health Systems submitted a letter regarding the Child which stated that he is afraid of his Mother and Father; that he does not want to visit with his parents; that his fear has affected him mentally and emotionally; and he is not emotionally or mentally ready to have family visits. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/20/2016, ¶"o").

On July 27, 2015, CEU submitted a Progress Report as to Father, which stated that Father engaged in Intensive Outpatient treatment through NET on December 29, 2014; that his attendance was sporadic; and that his last date of attendance was June 22, 2015. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/20/2016, ¶"p").

On July 28, 2015, A Permanency Review Hearing was held before the Honorable Allan L. Tereshko. The Court ordered DHS to provide parents with tokens. Parents are referred to CEU for drug screen, reassessment and monitoring. (Continuance Order, 7/28/2015).

On October 8, 2015, ARC submitted a Parent/Caregiver Closing Summary Report regarding Mother, stating that Mother is a re-enrollee; that she was previously closed out at ARC on April 21, 2015; that she attended DHS Orientation on July 23, 2015; that

7

Mother only attended one Parent Action Network (PAN) Placement Workshop on August 22, 2015; that from September 9, 2015 until October 7, 2015 ARC made a number of attempts to contact Mother, to no avail; and that on October 7, 205, her case at ARC was closed due to non-participation. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/20/2016, ¶"s").

On October 20, 2015, WES Health Systems submitted a letter regarding Child stating that the Child is still afraid of his parents; that he does not want visits with them; and that he does not want to reunite with them. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/20/2016, ¶"t").

On October 26, 2015, DHS and the CUA held an SCP meeting. The Permanency Goal for the Child was changed to "Adoption". The parental objectives established for the parents were the same as previously established. Both Mother and Father failed to participate in the SCP meeting. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/20/2016, ¶"u").

On October 26, 2015, CEU submitted a Progress Report as to Father, which stated that Father engaged in Intensive Outpatient treatment through NET on December 29, 2014; that his attendance was sporadic; and that his last date of attendance was June 22, 2015; and that he was unsuccessfully discharged from treatment on July 15, 2015 due to non-compliance with the treatment mandates. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/20/2016, ¶"v").

A Permanency Review Hearing was held on October 27, 2015 before the Honorable Allan L. Tereshko. The Court found the legal custody of the Child shall remain with DHS. Placement of the Child remains in Foster Care (Kinship) through

Lutheran. Child's concurrent placement plan was "Adoption." Mother referred to CEU for dual diagnosis assessment, monitoring, and a forthwith drug screen; that she re-engage in ARC for parenting and domestic violence classes. Mother to provide documentation of being accepted for inpatient medical treatment. Father is referred to BHS for consultation/evaluation; that he provide documentation of employment; Father to be referred to MENERGY, appointments to be scheduled around his work schedule. Father is legally responsible for the financial support of the Child, shall pay support to the County in the amount as determined by the Court. CEU Reports as to Mother and Father are incorporated by reference. (Permanency Review Order, 10/27/2015).

On February 1, 2016, DHS and CUA held an SCP meeting. The permanency goal for the Child was Adoption. The parental objectives for the parents were the same as previously established. Mother and Father failed to participate in the SCP meeting. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/20/2016, ¶"y").

On February 29, 2016, WES Health Systems submitted a letter regarding Child stating that the Child is still afraid of his parents and that he does not want visits with them. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/20/2016, ¶"z").

On February 29, 2016, Community Behavioral Health (CBH) records stated that Father was referred to BHS for an evaluation on November 3, 2015; Father telephoned BHS stating that he would not be able to attend his evaluation appointment and rescheduled for November 18, 2015; that on November 18, 2015 Father was a no show for his evaluation appointment; and that as of February 29, 2016, CBH had no record of

9

Father being engaged in mental health treatment. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/20/2016, ¶"aa").

On June 16, 2016, the Honorable Allan L. Tereshko continued the hearing for service on parents. Child remains in Kinship Care through JFCS with Maternal Aunt. CUA to assist with summer camp as to Child. Safety as of 6/13/2016 (Continuance Order, 6/16/2016).

## TERMINATION HEARING

On July 27, 2016, this Court held a Goal Change/Termination Hearing and heard testimony on DHS's Petition to Terminate Father's Paternal Rights as to his Child, and Change the Permanency Goal to Adoption. Father was present and represented by his attorney. (N.T. 7/27/2016, p.2 at 25).

The Assistant City Solicitor, Megan Fitzpatrick's first witness was Shanae Johnson, DHS Social Worker, who was the investigative worker for the GPS Report called in August 2014 alleging drug and alcohol abuse by the parents and inappropriate discipline. She interviewed the parents, the Child and the Aunt. The Child, who was eight (8) years old at the time, stated that he was fearful of Mother and Father's drug involvement, and was able to articulate his parent's drug involvement in the home. The Aunt stated that the parents had left the Child at the beginning of the summer and she had not heard back from the parents. She found the Child to be credible, and consistent with the allegations; the parents' drug screens were positive for drug use. (N.T., 7/27/2016, p. 10 at 1-25 & p.11 at 1-17).

10

She testified the initial recommendations for the parents at the time was CEU drug screenings, BHS, and supervised visits with the Child at the Child's discretion. Parents denied the Child's allegations regarding inappropriate physical discipline, which the Child alleged Father would put his fingers down his throat to make him vomit, whenever he stated he had a stomach ache. The Child also alleged the parents would use physical discipline for no apparent reason. (N.T., 7/27/2016, p.10 at 1-25; p.11 at 1-17).

On cross-examination by Faryl Bernstein, the Child Advocate, Ms. Johnson noted the Child was interviewed at the home of Maternal Aunt and her husband, where the Child had been dropped off in late June or early July, 2014. (N.T., 7/27/2016, p.14 at 13-24).

On cross-examination by Lisa Visco, attorney for Father, Ms. Johnson stated her last involvement in the case was a safety date on November 17, 2014. She further noted the Child told her he did not want to see his parents at the time she was on the case. (N.T., 7/27/2016, p.16 at 5-21).

The next witness to testify was Carl Sauveur, the CUA Case Manager at Turning Points for Children. He testified that visitation between the Child and his parents was suspended per Court Order. A recommendation was needed from the Child's therapist before visitation could be reopened, however, he received a letter from the therapist stating the Child is emotionally and mentally not ready for visits with his family. Since his agency has had the case, he noted that there has been no contact between the Child and his parents. (N.T., 7/27/2016, p.23 at 5-21).

Mr. Sauveur testified he has had the opportunity to observe the relationship the Child has with his Aunt and her husband, the Kinship source. He observed the

11

relationship to be a good one, and they are supportive of the Child's education and help him with his schoolwork. They go on outings with the Child and he seems to be really bonded with his Maternal Aunt and Uncle. He noted the Child currently looks to his Maternal Aunt as a parent to meet his daily needs, and this home is a pre-adoptive home. He last saw the Child at the home on July 18, 2016, and the Child appeared safe with his needs being met. (N.T., 7/27/2016, p.24 at 8-24; p.25 at 1-6).

Mr. Sauveur testified Father's objectives included attending MENERGY, regarding the domestic violence and spousal abuse, which Father never completed. Regarding employment, he noted that he did not believe Father was currently employed. Regarding parenting class, Father did participate and complete a parenting class. (N.T., 7/27/2016, p.33 at 10-25; p.34 at 11-15; p.35 at 21-24).

Further testimony of Mr. Sauveur noted that regarding mental health, Father was referred to BHS. Father was scheduled for drug and alcohol treatment, however he never showed up. He further testified that Father tested positive for cocaine use on the testing report dated December 2, 2014. He also noted Father was referred to NET for intensive outpatient treatment, however Father never completed that treatment nor has Father ever re-engaged in any type of intensive outpatient treatment. (N.T., 7/27/2016, p.35 at 8-15; p.36 at 8-23.

Mr. Sauveur noted he has not had contact with Father since November of 2015 and that Father has not ever reached out to him to inquire about his Child. He then opined that the Child would not suffer irreparable harm if his Father's parental rights were terminated because the Child does not feel comfortable with Father, nor does he

12

have a relationship with him. He lastly opined that Adoption would be in the best interest of the Child. (N.T., 7/27/2016, p.34 at 4-10; p.37 at 13-24).

On cross-examination by Ms. Bernstein, the Child Advocate, Mr. Sauveur noted the Maternal Aunt and Uncle have a daughter, who has a brother-sister relationship with D.D.G. (N.T., 7/27/2016, p.27 at 8-17).

Further on cross, he noted that Father was discharged from drug and alcohol treatment in July of 2015 due to noncompliance, and Father has never provided any documentation about his attendance at any other program, nor any documentation regarding compliance with any of his SCP objectives. He further noted that Father refused to speak to him. Regarding the Child's relationship with his Father, Mr. Sauveur stated the Child does not feel comfortable being around his Father, nor comfortable in seeing him. He noted that Mother and Father currently reside together. (N.T., 7/27/2016, p.38 at 7-21; p.39 at 15-25; p.40 at 1-11).

On cross-examination by Ms. Visco, Father's attorney, Mr. Sauveur stated that he visited the family home on Spruce Street. He noted that after the Child was placed, the parents made two telephone calls to him, however the Child was uncomfortable speaking to them. He also testified that Father made two visits to Menergy in 2015, did not complete the program and was unsuccessfully discharged from drug and alcohol treatment at NET on July 15, 2015. He noted that Father has not had a positive drug screen since July 2015. (N.T., 7/27/2016, p.41 at 2-22; p.42 at 2-24; p.43 at 10-25; p.44 at 19-24).

13

On re-cross-examination by Ms. Fitzpatrick, attorney for DHS, Mr. Sauveur stated that Father did not submit to any drug screens after the October 2015 hearing, although he was Court Ordered to do so. (N.T., 7/27/2016, p.46 at 1-10).

Father was the next witness to testify. He stated he attended and completed the NET program. He also stated he is currently employed by his Uncle doing side jobs in construction. He testified Mother lives with him in a two bedroom apartment. He also stated he completed the week long parenting class in 2015. He noted that he was told he could not have any contact with his son, and he did not have contact with him nor Maternal Aunt or Uncle. (N.T., 7/27/2016, p.47 at 1-25; p.48 at 4-25).

Father testified he does not want his parental rights terminated. He claims to have had an arrangement with the Maternal Aunt that the Child would spend the summer there. He was going to pick up his son when school started again, but he received a letter from DHS stating that he was placed and we had to go to Court. He denied he gave custody of his son away. (N.T., 7/27/2016, p.49 at 9-25).

On cross-examination by Ms. Fitzpatrick, Father stated he left numerous voicemail messages for the Case Manager. Further, Father stated the Case Manager told him his son did not want to see him and that he did not have a bond with him. Further, he noted he could not provide documentation of his compliance with any of the programs he was referred to. (N.T., 7/27/2016, p.51 at 1-25; p.52 at 1-11).

## STANDARD OF REVIEW AND LEGAL ANALYSIS

In reviewing an appeal from an order terminating parental rights, the Superior Court adhere to the following standard: [A]ppellate courts must apply an abuse of

14

discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. In re: R.J.T., 9 A.3d 1179, 1190 (Pa. 2010) If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. Id.; R.I.S., [36 A.3d 567, 572 (Pa. 2011).

Termination of parental rights is governed by Section 2511 of the Adoption Act 23 Pa.C.S.A. §§ 2101–2938, which requires a bifurcated analysis. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond. *In re L.M.,* 923 A.2d 505, 511 (Pa.Super.2007) (citations omitted). In re Adoption of C.J.P., 2015 PA Super 80, 114 A.3d 1046, 1049-50 (2015). The Court need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. In re Adoption of C.J.P., 2015 PA Super 80, 114 A.3d 1046, 1050 (2015).

15

**A. The Trial Court Properly Found the Department of Human Services Met Its Burden by Clear and Convincing Evidence To Terminate Father's Parental Rights Pursuant to 23 Pa.C.S.A. §2511(a)(1), and (2),[1]**

This Court found clear and convincing evidence to terminate Father's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(1), and (2).

After hearing the credible testimony of the DHS Social Worker and the CUA Case Manager, the Court found by clear and convincing evidence that their observations and conclusions regarding Father's non-compliance with the FSP objectives, and lack of ability and or refusal to fulfill his parental responsibilities were persuasive.

The Record demonstrates Father's ongoing inability to perform his parental duties and also his failure to remedy the conditions that brought the Child into care.

Testimony presented provided clear and convincing evidence that the Child

---

[1] 1(a) General Rule.—the rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parenting claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

(5) The child has been removed from the care of the parents by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

(8) The child has been removed from the care of the parent by the court or under voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of the parental rights would best serve the needs and welfare of the child.

16

was and continues to be fearful of his parents because of their continued use of illegal substances and the abuse he has suffered. The Child, who is ten years old, chooses not to have contact with them.

### B. Trial Court Properly Found that Termination of Father's Parental Rights was in the Children's Best Interest and that DHS Met Its Burden Pursuant to 23 Pa.C.S.A. §2511(b).[2]

After the Court finds that the statutory grounds for termination have been satisfied, it must then determine whether the termination of parental rights serves the best interests of the children pursuant to 2511(b) In re Adoption of C.L.G., 956 A2d 999 (Pa.Super 2008). In terminating the rights of a parent, the Court 'shall give primary consideration to the development, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. §2511(b). One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child. In re T.S.M., 71 A3d.

The testimony provided this Court with clear and convincing evidence that termination of Father's parental rights would be in the best interest of the Child, who lived with his Maternal Aunt and Uncle since placement started and is clearly bonded with them. They are supportive of the Child's education and help him with his schoolwork. They go on outings with the Child, and the Child currently looks to his

---

[2] Other Considerations.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1),(6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

Maternal Aunt as a parent to meet his daily needs,

## CONCLUSION

As discussed above, the Trial Court found that Father's testimony was not credible regarding his compliance with objectives. He failed to provide documentation of successful completion of Court Ordered requirements. On the contrary, credible testimony and documents were presented by the Social Worker and Case Manager that corroborated their testimony that Father failed to complete requirements, and evidenced an incapacity to parent. He has not contacted the provider or DHS to learn about the growth and well- being of the Child. The Court was not persuaded that Father could or would resolve these issues in the near future.

This Court finds credible the testimony from the Agency workers that the Child would not suffer irreparable harm if Father's rights were terminated and that termination of Father's parental rights would be in the best interest of the Child.

The Court concluded:

> "Considering the evidence was clear and convincing and DHS has established under 2511(a)(1) and (2) that Father has failed to remedy the issues that brought the Child into care and will not be able to remedy those issues going forward. There's an estrangement between him and the Child which has not been remedied nor has Father made any believable efforts to remediate the impaired relationship.
>
> Father's rights are terminated pursuant to 2511(a)(1) and (2) and 2511(b). There would be no irreparable harm because the Child does have a parent child relationship with his foster resource and does not have one with Father

18

so there would be no harm let alone irreparable harm in terminating.

Since both Mother and Father's rights have now been terminated the goal can be moved to adoption for this Child.

Any issues of credibility between and case worker and Father are resolved in favor of DHS and the case worker.

(N.T. 7/27/2016, p.52 at 18-25; p.53 at 1-19).

For the foregoing reasons, this Court respectfully requests that the Order of July 27, 2016 Terminating Father, D.G.'s Parental Rights and changing the Child's Permanency Goal to Adoption be AFFIRMED.

BY THE COURT:

_____
ALLAN L. TERESHKO, Sr. J.

10-13-16
_____
DATE